**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JODIE ANN BEATTY,<br><br>     **Plaintiff,**<br><br>  -against-<br><br>NEW YORK CITY DISTRICT COUNCIL<br>OF CARPENTERS AND JOINERS OF<br>AMERICA,<br><br>     **Defendant.** | **1:23-cv-02126 (ALC) (SN)**<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Jodie Ann Beatty filed this action against New York City District Council of Carpenters and Joiners of America, alleging gender discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, and New York City Human Rights Law. Defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendant's motion for summary judgment is hereby **GRANTED** as to Plaintiff's gender discrimination claims and otherwise **DENIED.**

## STATEMENT OF FACTS

This factual history is derived from the complaint, *see* ECF No. 1-1 ("Compl."), the parties' 56.1 statements, *see* ECF Nos. 36, 38, 44, their briefs, *see* ECF Nos. 37, 42, 43, and documents relied upon therein.

Plaintiff Jodie Ann Beatty ("Plaintiff" or "Beatty") was employed by Defendant New York City District Council of Carpenters and Joiners of America ("Defendant" or "District Council") from March of 2016 to May 19, 2022. ECF No. 36 ¶ 1. The District Council is an intermediate labor organization representing carpenters across New York City and nearby regions. ECF No. 37

1

at 1. Plaintiff was hired specifically for Local 212, a local union, established in 2016 and servicing high-rise concrete construction projects. ECF No. 36 ¶¶ 2, 6, 15. Plaintiff refers to her title as "Business Agent," but Defendant refers to it as "Council Representative" ("Rep"). ECF No. 44 ¶ 198. Council Representatives employed by the District Council enforce collective bargaining agreements and manage daily union operations, including job site oversight, contract enforcement, and worker advocacy. ECF No. 36 ¶¶ 7–10. Their responsibilities include visiting job sites, addressing workplace issues, organizing demonstrations, engaging with government leaders, and promoting labor standards. *Id.*

Plaintiff's salary and that of one other Rep for Local 212 were initially funded by the parent union, the United Brotherhood of Carpenters and Joiners of America ("UBC"). ECF No. 36 ¶ 16. In 2018, the UBC stopped funding her position and the District Council did so in its place. ECF No. 44 ¶ 289. During Beatty's employment, the District Council faced financial challenges due to the COVID-19 pandemic, which eventually led to layoffs. ECF No. 36 ¶¶ 55, 59. On May 19, 2022, Plaintiff was terminated, purportedly as a cost-saving measure. ECF No. 38 ¶ 86.

While employed by the District Council, Plaintiff experienced hostility from fellow Council Representative Christopher Vesely ("Vesely"), including yelling and "non-communicative behavior," which she attributed to his personal issues. ECF No. 38 ¶¶ 34–37. Paul Capurso ("Capurso") and Joseph DiNapoli ("DiNapoli") were Lead Regional Manager and Regional Manager, respectively, of the Manhattan Rep Center, where Plaintiff worked. ECF No. 36 ¶ 31. Capurso and DiNapoli were aware of Vesely's conduct, although the parties dispute exactly when they learned of it. *See* ECF No. 36 ¶¶ 124, 128; ECF No. 38 ¶¶ 124, 128; ECF No. 44 ¶ 246. Undisputed is the fact that Plaintiff complained to Capurso and DiNapoli in May of 2018

and 2019 about Vesely. ECF No. 36 ¶¶ 38, 42. By May 2, 2019, Vesely had transferred to a different office and had limited interactions with Beatty. ECF No. 36 at ¶¶ 38, 40, 42, 44–45.

In addition to Vesely, Council Representative Glen Hatcher ("Hatcher") also made many demeaning comments about Plaintiff over the course of her employment. Plaintiff states that Hatcher frequently called her a "heifer" and asked her to get his lunch several times. ECF No. 36 ¶¶ 117, 122. "Plaintiff claims that more than once in 2021 or 2022, Hatcher said 'you're ugly. That's why you don't have a boyfriend.'" *Id.* ¶ 125. He also said "'[t]he only way your husband was able to get away from you was to die.'" *Id.* ¶ 126. These incidents were not formally reported to her supervisors, though Plaintiff maintains that Capurso and DiNapoli likely heard many of the comments. ECF No. 36 ¶¶ 127–29. Both supervisors maintain they were unable to hear and did not hear Hatcher's comments. ECF No. 36 ¶¶ 130–38.

Plaintiff also states that various co-workers, including Hatcher, would regularly make offensive hair and appearance-related jokes and derogatory remarks to her and other female employees. ECF No. 36 ¶¶ 105–16. Additionally, Plaintiff states that she was excluded from "job pitching conversations" during 2016 and 2017. ECF No. 44 ¶ 201.

Plaintiff claims she was the only one laid off without cause, but Defendant asserts a male Council Representative was also laid off soon after her. ECF No. 44 ¶ 208. After Plaintiff was fired, two men were hired as Council Representatives for Local 1556, which services workers who perform "marine drilling, diving, shoring of trenches[,] and below ground level excavations." ECF No. 37 at 22 (citing ECF No. 36 ¶ 173). On or about September 7, 2022, Plaintiff emailed District Council Executive Secretary Treasurer, Joseph Geiger, seeking re-employment, but was told that the District Council was not hiring at that time. ECF No. 37 at 7; ECF No. 36 ¶¶ 89–90. Plaintiff

filed a discrimination charge with the EEOC on November 1, 2022, and received a Notice of Right to Sue on November 15, 2022. ECF No. 37 at 7; ECF No. 36 ¶¶ 91–92.

In early 2023, the District Council sought to hire new Council Reps due to unexpected retirements, increased work hours, and anticipated higher dues income. ECF No. 37 at 8; ECF No. 36 ¶ 95. Before making new hires, on March 23, 2023, HR Director Rebecca Seidner offered to recall Plaintiff from layoff, but Plaintiff declined. *Id.*; ECF No. 36 ¶ 97.

## PROCEDURAL HISTORY

On February 10, 2023, Plaintiff Jodie Ann Beatty filed this action in state court against the New York City District Council of Carpenters and Joiners of America, alleging gender discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as well as New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the Administrative Code of the City of New York ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq. See generally* Compl. On March 13, 2023, Defendant removed the case from the Supreme Court for County of New York to federal court. *See* ECF No. 1. Defendant filed its answer to the complaint on March 20, 2023. ECF No. 4. This case was subsequently referred to Magistrate Judge Sarah Netburn for general pretrial matters. *See* ECF No. 6. On May 8, 2024, Defendant filed its motion for summary judgment. ECF No. 29. Plaintiff filed her opposition brief on June 18, 2024. ECF No. 42. Defendant filed its reply brief on July 2, 2024. ECF No. 43. The Court considers the motion fully briefed. *See* ECF Nos. 29–46.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City*

*Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). Material facts are facts that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. An issue of fact is "genuine" when a reasonable fact finder can render a verdict in the nonmoving party's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (internal quotation omitted)). "[T]he court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Marvel Characters v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002)) (internal quotation marks omitted). If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-7354, 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016); *see also* Fed. R. Civ. P. 56(c). The non-moving party "may not rest upon mere allegation[s] or denials of his pleadings." *Anderson*, 477 U.S. at 259. Rather, the non-moving party must "designate specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and these facts must be "admissible in evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (citing Fed. R. Civ. P. 56(e)). "The mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment, and "[i]f the

5

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 247 (emphasis in original), 250 (internal citations omitted).

## DISCUSSION

The District Council moves for summary judgment on all claims in the complaint. *See* ECF No. 37. Specifically, the District Council argues that Beatty's hostile work environment claims must be dismissed because: (1) some are untimely, (2) the District Council is not liable, and (3) her allegations do not establish severe or pervasive conduct. As to her gender discrimination claims, the District Council argues that Beatty fails to demonstrate circumstances which raise an inference of discrimination and that the District Council's legitimate, non-discriminatory reason was pretextual. *See generally id.* The Court will first consider Beatty's hostile work environment claims pursuant to Title VII, the NYSHRL, and the NYCHRL.

### I.    Hostile Work Environment Claims

#### A. Timeliness

The Court must first address the timeliness of Beatty's claims. "[A] Title VII plaintiff generally must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (quoting 42 U.S.C. § 2000e-5(e)(1)). Beatty submitted an inquiry to the EEOC on or around June 20, 2022, *see* ECF No. 40-4, and a charge of discrimination on or around November 1, 2022. *See* ECF No. 30-3. Beatty received her right-to-sue letter on November 15, 2022. *See* ECF No. 30-4. Beatty argues that her inquiry should be the operative date to determine the viability of her claims. *See* ECF No. 38 ¶ 91. But this is incorrect, as, noted in her email from the EEOC, "[t]he laws enforced by the EEOC . . . require you to file a charge before

6

you can file a lawsuit for unlawful discrimination. There are strict time limits for filing a charge."
ECF No. 40-4. Accordingly, claims arising from conduct that occurred before January 5, 2022
(i.e., 300 days before Plaintiff filed her charge of discrimination) are time-barred. [1] However, the
Court may consider these time-barred claims pursuant to the "continuing violation" doctrine.

Under the "continuing violation" doctrine, "if a Title VII plaintiff files an EEOC charge
that is timely as to any incident of discrimination in furtherance of an ongoing policy of
discrimination, all claims of acts of discrimination under that policy will be timely even if they
would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135,
156 (2d Cir. 2012) (citation and quotation marks omitted). However, "discrete discriminatory acts
are not actionable if time barred, even when they are related to acts alleged in timely filed charges."
*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Discrete acts can include
"termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. "Hostile
environment claims are different in kind from discrete acts. Their very nature involves repeated
conduct." *Id.* at 115. Indeed "[p]rovided that *an* act contributing to the claim occurs within the
filing period, the entire time period of the hostile environment may be considered by a court for
the purposes of determining liability." *Id.* at 117 (emphasis in original); *see also Davis-Garett v.
Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("A charge alleging a hostile work
environment claim . . . will not be time barred so long as all acts which constitute the claim are

---

[1] In contrast, the statute of limitations for NYSHRL and NYCHRL claims is three years, tolled for the period between
the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter. *See Davis–Bell v. Columbia Univ.*,
851 F.Supp.2d 650, 680 (S.D.N.Y.2012) (citing C.P.L.R. § 214; N.Y. City Admin. Code § 8–502(d); *Siddiqi v. N.Y.C.
Health & Hosp. Corp.*, 572 F. Supp. 2d 353, 373 (S.D.N.Y. 2008)); *Kassner v. 2nd Avenue Delicatessen Inc.*, 496
F.3d 229, 238 (2d Cir. 2007).

part of the same unlawful employment practice *and at least one act falls within the time period*."

(quoting *Morgan*, 536 U.S. at 122) (alterations in original)).[2]

"For a hostile-work-environment claim to survive a timeliness challenge, a plaintiff must plausibly allege that '(1) the acts occurring before the 300–day cutoff constitute part of the same actionable hostile work environment practice, and (2) at least one act contributing to the claim occur[ed] within the filing period.'" *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 779 (S.D.N.Y. 2019) (quoting *Clarke v. InterContinental Hotels Grp.*, PLC, No. 12 Civ. 2671 (JPO), 2013 WL 2358596, at *8 (S.D.N.Y. May 30, 2013)). As discussed in further detail below, Beatty's claims allege a pattern of harassment that occurred over the course of several years, including in 2022. *See* ECF No. 36 ¶¶ 123, 125, 126, 128; ECF No. 28 ¶¶ 234–35. Accordingly, the Court considers Plaintiff's allegations that occurred before January 5, 2022 for purposes of her hostile work environment claims.[3]

### B. Merits

Plaintiff brings hostile work environment claims pursuant to Title VII, the NYSHRL, and the NYCHRL. The hostile work environment standard and analysis for Title VII and NYSHRL

---

[2] Moreover, even if Plaintiff's time-barred allegations are "discrete acts" that fall outside the purview of the "continuing violation" doctrine, the Court could consider evidence of these allegations as background to any alleged conduct that falls within the limitations period. *See Toussaint v. City of New York*, 19-CV-1239, 2020 WL 3975472, at *2 (S.D.N.Y. July 14, 2020) ("Of course, even where the continuing violations doctrine does not apply, the Court may still consider 'background evidence from outside the limitations period.'" (quoting *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 146 (2d Cir. 2012))); *see also Sooroojballie v. Port Auth. of New York & New Jersey*, 816 F. App'x 536, 542 n.5 (2d Cir. 2020) ("[T]o the extent that any of this time-barred evidence could be construed as a discrete act of discrimination outside the scope of the continuing violation doctrine, the district court correctly determined that such evidence is admissible as background to the acts that fall within the limitations period.").

[3] "For hostile work environment claims, courts apply the same standard for a continuing violation under Title VII, . . . NYSHRL, and NYCHRL." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 309 n.10 (S.D.N.Y. 2016).

claims is essentially the same. *See Lawrence v. Chemprene, Inc.*, No. 18-CV-2537, 2019 WL 5449844, at *10 (S.D.N.Y. Oct. 24, 2019). However, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

     *i. Title VII & NYSHRL*

  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). In order to succeed on a hostile work environment claim under Title VII, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris*, 510 U.S. at 21–22).

  Significantly, a plaintiff bringing a hostile work environment claim must demonstrate that the hostile conduct at issue was carried out because of her membership in a protected class. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Courts must "distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of

discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

A reasonable juror could conclude that Beatty's workplace was permeated with discriminatory intimidation and harassment severe enough to create an abusive working environment. It is undisputed that "beginning in 2018, Vesely became increasingly hostile" and "basically stopped talking with her." ECF No. 37 at 4 (internal quotations omitted). This peaked when Vesely berated her about a workplace issue in May of 2018, which Beatty reported to their supervisors, Capurso and DiNapoli. *See id.* Beatty testified that Vesely's harassment continued for another year following this meeting. *See* ECF No. 42 at 20–21. She reported these incidents to Capurso, who "responded with his stock answer, 'We'll talk to him.'" *Id.* at 21; *see also* ECF No. 44. Plaintiff also alleges offensive hair and appearance-related jokes and derogatory remarks were made by her co-workers between 2018 and 2022. ECF No. 36 ¶¶ 101–27.

Defendant argues that the comments about Beatty's hair "are inactionable as 'mere offensive utterance[s].'" ECF No. 37 at 11 (quoting *Cristofaro v. Lake Shore Cent. Sch. Dist.*, 473 F. App'x 28, 30 (2d Cir. 2012)). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* But "[t]here is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment; rather, we view the circumstances in their totality, examining the nature, severity, and frequency of the conduct." *Id.* at 379.

While the District Council may be correct that hair comments alone would not establish a hostile work environment, those are not the only comments on which Beatty relies. Considering

10

the hair comments, alongside the others made by Hatcher and Vesely, the Court finds a reasonable jury could conclude that the conduct "alter[ed] the conditions of the [Plaintiff]'s employment and create[d] an abusive working environment." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).

Defendant argues that, even if this conduct is sufficient to establish a hostile work environment, many of the comments fail to "demonstrate that the hostile conduct at issue was carried out because of her membership in a protected class." *Guzman v. City of N.Y.*, 93 F. Supp. 3d 248, 263 (S.D.N.Y. 2015); *see also* ECF No. 37 at 13 (quoting *id.*). "Facially neutral incidents may be included . . . among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex." *Alfano*, 294 F.3d at 378. "But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Id.*

It is not disputed that some of the comments made to or about Beatty provide an inference that they were based on sex. In addition to comments about Beatty, Plaintiff provides evidence of comments made to other female employees that were not gender-neutral. *See* ECF No. 39-4 at 19 (deposition testimony of Yariela Carvajal, stating comments were made about women's outfits and bodies in the workplace). While some of the comments made to Beatty were facially neutral, drawing all inferences in her favor, the other evidence of "a gender-based hostile or abusive environment . . . [presents] a question of fact" inappropriate for the Court to resolve at this stage. *Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16-CV-6278 (VEC), 2018 WL 4625768, at *9 n.13 (S.D.N.Y. Sept. 26, 2018); *see also id.* at *9 (highlighting gender-based comments about other female employees as circumstantial evidence of a hostile work environment).

*ii.  NYCHRL*

The standard for maintaining a hostile work environment claim is lower under the NYCHRL." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011). Plaintiff "need only adduce evidence of 'the existence of unwanted gender-based conduct' because liability under NYCHRL is 'determined by the existence of unequal treatment.'" *Id.* (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 38 (2009)). For the reasons set forth above, a reasonable jury could conclude that Plaintiff was subjected to "unwanted gender-based conduct" based on her allegations. Moreover, since a reasonable jury could render a verdict for Plaintiff on her hostile work environment claims under Title VII and the NYSHRL, Plaintiff also meets the lower standard for NYCHRL claims.

## C.  Liability for the District Council

To prevail on a claim against an employer for a hostile work environment under Title VII, the NYSHRL, and the NYCHRL, "a plaintiff must prove that . . . the defendant is vicariously liable for the discriminatory conduct." *Grandy v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16-CV-6278 (VEC), 2018 WL 4625768, at *8 (S.D.N.Y. Sept. 26, 2018) (citing *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015)). Under Title VII and the NYSHRL, "[a]n employer's liability for hostile work environment claims depends on whether the underlying harassment is perpetrated by the plaintiff's supervisor or his non-supervisory co-workers." *Wiercinski*, 787 F.3d at 113 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). "If the harassment is perpetrated by the plaintiff's 'non-supervisory coworkers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.'" *Id.* (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004)).

12

"[A]n employer may be vicariously liable under the NYCHRL for the acts of its employees if (1) the offending employee exercised managerial or supervisory responsibility over the plaintiff; (2) the employer knew of the offending employee's discriminatory conduct and either acquiesced in it or failed to take corrective action in response to it; or (3) the employer should have known of the offending employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent it." *Grandy*, 2018 WL 4625768, at *9 (citing *Chauca v. Abraham*, 841 F.3d 86, 90 (2d Cir. 2016)).

Beatty does not allege that her supervisors, Capurso and DiNapoli, made comments contributing to the hostile work environment. *See generally* Compl. The question is then whether they were aware of the comments made by Beatty's co-workers, and if so, when they learned and whether they took remedial action.

### i. Knowledge

It is undisputed that Plaintiff reported Vesely's harassment to Capurso and DiNapoli in or around May of 2018. *See* ECF Nos. 36 ¶ 148; ECF No. 38 ¶ 148. The Court will consider later whether Capurso and DiNapoli's response to her report qualifies as appropriately remedial. First, the Court must determine whether the District Council is correct that Beatty fails to demonstrate that Capurso and DiNapoli knew or reasonably should have known about the harassing comments previous to her report.

Defendant asserts that Capurso and DiNapoli had no knowledge of the harassing comments made to and about Beatty prior to her reporting it. In support of this, the District Council cites Capurso and DiNapoli's declarations stating that they did not hear the alleged comments. *See* ECF No. 43 at 10 (citing ECF No. 31 ¶¶ 21–27; ECF No. 34 ¶¶ 45–49). Beatty argues that DiNapoli knew about the comments regarding her hair as he asked her "Why do they always pick on your

hair?" ECF No. 38 ¶ 224. The District Council denies this comment and cites DiNapoli's declaration to assert he made no such comment. *See* ECF No. 44 ¶ 224. But DiNapoli does not reference any of the hair comments in his declaration. *See* ECF No. 31 ¶¶ 22–27. Absent a denial, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could determine that DiNapoli was aware of the comments made about Beatty's hair. The Court will consider whether any action was taken based on these comments and, further, whether these comments would amount to a hostile work environment later.

As to the remainder of the harassing comments which form the basis of her hostile work environment claims, Capurso and DiNapoli specifically deny hearing them. *See* ECF Nos. 31 ¶¶ 21–27, 34 ¶¶ 45–49. Nevertheless, Beatty asserts Capurso and DiNapoli must have heard them because they were made in close proximity to their office and their door was often open. *See* ECF No. 40 ("Many offensive comments were made while we congregated at or around the 20 foot table outside. Offensive comments were made in the early morning, in the afternoon and before and after conferences held in the office. Capurso and DiNapoli certainly knew and heard what was going on, even if they sometimes had a radio on that we could barely hear outside their office."). This is not sufficient to rebut the District Council's evidence.

The Second Circuit has squarely addressed the burden of proving knowledge in the context of a Title VII action and held a plaintiff

> may not rely solely on a request that the factfinder disbelieve testimony about when an employer made the decision to fire the plaintiff; the plaintiff must offer the factfinder affirmative evidence to support a claim that a decisionmaker had knowledge of the disability when the decision to fire was made.

*Kolivas v. Credit Agricole*, No. 77636, 1996 WL 684167, at *4 (S.D.N.Y. Nov. 26, 1996) (citing *Martin v. Citibank, N.A.*, 762 F.2d 212 (2d Cir. 1985)), *aff'd*, 125 F.3d 844 (2d Cir. 1997). "To

hold otherwise, the Court noted, would be to permit the jury to reach a verdict based on 'sheer surmise and conjecture.'" *Id.* (quoting *Martin*, 762 F.2d at 218).

Although raised in the context of whether an inference of discrimination existed, this holding is equally instructive here. As Beatty presents no affirmative evidence, beyond conjecture, that Capurso or DiNapoli heard the comments, she fails provide a basis for a reasonable jury to disbelieve Capurso and DiNapoli's statements.

*ii.  Remedial Action*

Where a supervisor's remedial actions prove inadequate or ineffective, an employer can be found liable for a hostile work environment. *See Vance v. Ball State Univ.*, 570 U.S. 421, 449 (2013) ("Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant."); *see also Grandy*, 2018 WL 4625768, at *10 ("This memorandum clearly proved ineffectual."); *id.* at *10 n.16 ("[A] reasonable juror could find that these walkthroughs were inadequate."). There does seem to be a disputed issue of material fact as to whether Capurso and DiNapoli took appropriate remedial steps following their attention to the harassing comments. As to the hair comments, Plaintiff states no action was taken and the District Council presents no evidence to refute this (other than to deny Capurso or DiNapoli's knowledge of the comments in the first instance). *See* ECF No. 38 ¶¶ 223–24; ECF No. 44 ¶¶ 223–24.

Regarding Vesely's harassment, the parties do not dispute that "after she reported to Capurso and DiNapoli that Vesely had yelled at her about a workplace issue, Capurso and DiNapoli met with Plaintiff and Vesely separately and together, had Vesely apologize, and told them to avoid each other." *See* ECF No. 36 ¶ 148; ECF No. 38 ¶ 148. Beatty testified that after

15

this meeting Vesely's harassment continued for another year. *See* ECF No. 42 at 20–21. The fact that the harassment continued for a year might alone be sufficient for a reasonable jury to conclude that DiNapoli and Capurso's action was inadequately remedial. *See Vance*, 570 U.S. at 449.; *Grandy*, 2018 WL 4625768, at *10.

Beatty additionally testified that she repeatedly reported Vesely's harassment to Capurso throughout the year and he responded "with his stock answer, 'We'll talk to him.'" ECF No. 42 at 20–21. In May of 2019, after Capurso responded with this answer once again, Beatty reported Vesely's conduct to Dana Brownstein, head of District Council HR. *See id.* at 21. "Two days later, Brownstein started an investigation and Vesely was transferred to another office." *Id.* Beatty recognizes that this action is a remedial measure, but still contends that the District Council should be liable since her supervisors were aware of the conduct for a year and took no appropriately remedial action. *See* ECF No. 42 at 24–25. "'Once an employer has knowledge, . . . he has a duty to take reasonable steps to eliminate [the harassment].'" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000) (quoting *Snell v. Suffolk County*, 782 F.2d 1094, 1104 (2d Cir. 1986)). Based on these facts, a reasonable jury could find Capurso failed to take reasonable additional steps to address Vesely's harassment throughout the year. *See id.*

Taking this evidence together, and viewing it in the light most favorable to Plaintiff, the District Council could be liable for the hostile environment in Beatty's workplace. Given that she has raised an issue of material fact on the merits of these claims, Defendant's motion for summary judgment on Beatty's hostile work environment claims is denied.

## II.    Discrimination Claims

Plaintiff additionally brings gender discrimination claims pursuant to Title VII, the NYSHRL, and the NYCHRL.

16

### A. Timeliness

Unlike Plaintiff's hostile work environment claims, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened,'" and thus the continuing violation doctrine is not applicable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Accordingly, for purposes of Plaintiff's gender discrimination claims pursuant to Title VII, the Court cannot consider Plaintiff's claims that occurred before January 5, 2022. *See supra* I.A.

As to her NYSHRL and NYCHRL claims, both are subject to a three year statute of limitations. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("[C]laims under the NYSHRL and the NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts."). "By executive order, state law claims were tolled during the first months of the COVID-19 pandemic, from March 20, 2020, to November 3, 2020." *Latif v. City of New York*, No. 20 CIV. 8248 (AT), 2024 WL 1348827, at *4 (S.D.N.Y. Mar. 28, 2024) (citing *Gabin v. Greenwich House, Inc.*, 210 A.D.3d 497, 498 (N.Y. App. Div. 2022); *Brash v. Richards*, 195 A.D.3d 582, 582–85 (N.Y. App. Div. 2021)). Any conduct prior to April 8, 2019—three years and 207 days before Beatty filed her charge—is barred under the NYSHRL and NYCHRL.

While "the continuing violations doctrine of the NYSHRL mirrors that of Title VII, . . . [d]iscrete acts . . . [can] trigger the NYCHRL's continuing violations doctrine where they can be shown to be the result of a discriminatory policy or practice." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302–03 (S.D.N.Y. 2016). Beatty does not plead or argue such a policy or practice existed, so the continuing violations doctrine is inapplicable to her NYCHRL claims as well. *See* ECF No. 42 at 13. Beatty's Title VII claims concerning discrete instances of discrimination that occurred before January 5, 2022, and her NYSHRL and NYCHRL claims concerning discrimination that occurred before April 8, 2019 are time-barred.

**B. Merits**

    *i.  Title VII & NYSHRL*

    To establish a *prima facie* case of gender discrimination under Title VII and the NYSHRL, a plaintiff must show that: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citation omitted). Once a plaintiff establishes a *prima facie* case of gender discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the disparate treatment. *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (internal quotation marks omitted). If the employer provides such a reason, then the burden shifts back to the employee "to prove that discrimination was the real reason for the employment action." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

    Plaintiff puts forth two potential adverse employment actions: her termination on May 19, 2022 and her exclusion from job pitching in 2016 through 2017. *See* Compl. ¶¶ 25, 38. As a threshold matter, the latter is time-barred.

    As to Beatty's termination, the District Council provides a legitimate, nondiscriminatory reason: "[its] diminished financial status as a result in the severe downturn in the construction industry in the wake of the Covid-19 pandemic." ECF No. 37 at 19; *see, e.g.*, *Morrison v. Millenium Hotels*, No. 18-CV-06811(VEC), 2021 WL 1534293, at *4 (S.D.N.Y. Apr. 19, 2021) ("[A] reduction in workforce constitutes a legitimate, nondiscriminatory reason for termination of employment." (citing *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014))). "[T]o defeat summary judgment . . . the employee's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the employer's employment

decision was more likely than not based in whole or in part on discrimination." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (internal quotation and alternations omitted). Beatty does not succeed in doing so, as her allegations fail to even raise an inference of discrimination.

"'A plaintiff can establish an inference of discrimination through direct evidence of discriminatory intent, or through circumstantial evidence demonstrating that the employer treated plaintiff less favorably than a similarly situated employee outside of h[er] protected group.'" *Guzman v. City of New York*, 93 F. Supp. 3d 248, 259 (S.D.N.Y. 2015) (quoting *Jean v. Acme Bus Corp.*, No. CV 08–4885 ARL, 2012 WL 4171226, at *8 (E.D.N.Y. Sept. 19, 2012)). "A similarly situated employee is one 'similarly situated in all material respects' to the plaintiff," that is that they "must have 'engaged in comparable conduct.'" *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

Beatty insists that the District Council's reason is pretextual, arguing that it could not have been short on funds because it hired two more Reps after she was fired. *See* ECF No. 42 at 7. But this alone though does not satisfy her burden to defeat summary judgment. As she herself notes, "[j]ust as District Council argues that the other [Reps] handled Ms. Beatty's work, the remaining [Reps] could have handled the work of the fired male." *Id.* She argues this raises an inference of discrimination, but it only evinces that the District Council may have had additional rationales for firing her as opposed to one of her male colleagues, not that the other reason was discriminatory.

The District Council argues that Beatty's use of her male colleagues as comparators is incorrect as "Plaintiff's was indisputably the only remaining position among any of the Council Reps—Local 212 or otherwise—that had originally been funded by the UBC or any other outside source." ECF No. 37 at 21 (citing ECF No. 36 ¶ 167). Defendant argues that the fact her position

19

was then funded under the District Council budget after 2018 carried an additional financial burden for the District Council. *See id.* Defendant additionally cites the fact that all Local 212 Council Reps were eventually phased out as evidence that Beatty's termination was solely a financial decision. *See id.*

Again, even if there were a question as to whether financial concerns could on their own explain the Defendant's decision, Beatty fails to raise an inference of discrimination. Beatty's focus on the two male Reps hired after her termination is unavailing as they are not adequate comparators to herself. As the District Council noted, the two Reps hired were for Local 1556, which services workers who perform "marine drilling, diving, shoring of trenches[,] and below ground level excavations." *Id.* at 22 (citing ECF No. 36 ¶ 173). This is distinct from the high-rise concrete construction work Beatty was familiar with as a Rep for Local 212. *Id.* (citing ECF No. 36 ¶ 174). Plaintiff denies that this difference exists between the Locals, but provides no evidence to support this or alternative descriptions for the Locals' distinctions. *See* ECF No. 38 ¶¶ 173, 174; *see generally id.* Even construed in Beatty's favor, this record does not establish a dispute of fact as to whether Defendant's justification for firing her was "a pretext for a *prohibited* reason." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) (emphasis in original).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII and NYSHRL claims for gender discrimination.

### ii.  NYCHRL

"To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *see also id.* at 109 ("[C]ourts must analyze NYCHRL claims separately and

independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." (citation and internal quotation marks omitted)). The defendant "is entitled to summary judgment on this basis only if the record established as a matter of law that discrimination played no role in its actions." *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 836 (S.D.N.Y. 2013).

"While the NYCHRL embodies a broader conception of actionable discrimination . . . than its federal and state counterparts, it still requires that the adverse employment action take place 'under circumstances that give rise to an inference of discrimination.'" *Stinson v. City Univ. of New York*, No. 17-CV-3949 (KBF), 2018 WL 2727886, at *8 (S.D.N.Y. June 6, 2018) (quoting *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010)). As discussed above, Beatty's claims fail to raise an inference of discrimination. Accordingly, Defendant is entitled to summary judgment on Plaintiff's NYCHRL gender discrimination claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is hereby **GRANTED** as to Plaintiff's gender discrimination claims and **DENIED** as to her hostile work environment claims. The Clerk of the Court is respectfully directed to close the pending motion at ECF No. 29.


**SO ORDERED.**
**Dated: March 31, 2025**
      **New York, New York**

                                   **ANDREW L. CARTER, JR.**
                                   **United States District Judge**